### C. H. MYERS ET AL. v. B. F. FREY.

No. 1965. Decided June 16, 1909.

**Adverse Possession—Joint Tenants.**

The possession of community property of a deceased husband and his wife adversely to the wife's community interest and with her knowledge, held by a daughter claiming as devisee of the husband, though she claimed to so hold the same for herself and a brother who was not in actual possession, but to whom jointly with her it had been devised, did not furnish a basis for a claim by limitation against the widow's community interest, in favor of such joint devisee not in actual possession, so long as the latter did not know of or authorize such adverse holding in his favor by the joint tenant, but recognized the claim of his mother to her community interest in the property. (Pp. 528-530.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Harris County.

Frey brought suit against Myers and wife for the recovery of real property, and appealed from a judgment for defendants. This was reversed and rendered in his favor, and the appellees thereupon obtained writ of error. Appellant also applied for writ of error upon points ruled adversely to him in that court.

*Fisher, Sears & Campbell* and *W. G. Sears,* for plaintiffs in error.— The possession of one cotenant or coheir is the possession of the others and is taken in trust for their benefit. Alexander v. Kennedy, 19 · Texas, 488; Phillipson v. Flynn, 83 Texas, 580; Terrell v. Martin, 64 Texas, 128; Stovall v. Carmichael, 52 Texas, 390.

A person may acquire title by adverse user by the occupancy of a tenant, or any person who occupies for him and in recognition of his title. Wood on Limitation, sec. 288, bottom page; 1 Am. and Eng. Enc. of Law, 820, 821.

When Mrs. Lankford, took possession of the land, openly claiming it as hers and brother's, this was an ouster, and set the statute in motion. Phillipson v. Flynn, 83 Texas, 580; Anderson v. Stewart, 15 Texas, 290; 1 Am. and Eng. Enc. of Law, 803-4-5.

*M. G. Fakes,* for defendant in error.—Mrs. Lankford, according to the finding of the court, holding for herself and brother, must necessarily recognize the interest of the other cotenant, as to perfect ouster against one must include all. Criswell v. Altemus, 7 Watts, 565; Buswell on Limitations, p. 303; Porter v. Hill, 9 Mass., 34; 6 Am. Dec., 32; Vaughan v. Bacon, 15 Me., 455; 33 Am. Dec., 628.

MR. JUSTICE BROWN delivered the opinion of the court.

The facts found by the Court of Civil Appeals are briefly but sufficiently stated as follows: The lots in controversy were deeded to R. P. Boyce on the 19th day of May, 1884, the deed reciting payment of the purchase money. At that time Mary F. Boyce was the wife of R. P. Boyce, and the latter died February 14, 1890, leaving surviving him his widow, Mary F. Boyce, and three children, to wit: a son, R. P. Boyce, Jr., Mariah Lanier Boyce and Roberta C. Boyce. The latter married Wm. Howard, and after his death married Smith, who, having died, she then married Lankford. In this opinion she will be designated as Mrs. Lankford.

R. P. Boyce left a will by which he devised his property to his son, R. P. Boyce, Jr., and his daughter, Roberta C. The will was duly probated, an inventory returned, and the estate was taken charge of by the executors and conducted under the orders of the court, of which there is no complaint. The property having been purchased during the marriage of R. P. Boyce and Mary F. Boyce, was found by the Court of Civil Appeals to be their community property. Thus one-half of the lots in controversy vested in Mary F. Boyce, and, by regular chain of title, not necessary to be detailed, her interest was vested in B. F. Frey. Immediately upon the death of R. P. Boyce, in 1890, Mrs. Lankford took possession of the

entire property in controversy, claiming it for herself and her brother, R. P. Boyce, Jr., and held possession of it from that time until the partition was made between her and her brother in 1898. Mrs. Lankford held adversely to the title of her mother, who knew of the adverse possession and the claim that Mrs. Lankford made that the property was the separate property of her father and that it passed to her and her brother under the will. We here copy the findings of fact made by the Court of Civil Appeals as follows:

"The day after the death of R. P. Boyce, which occurred on February 4, 1890, Roberta C. Lankford, for herself and her brother Robert, took possession of the property in controversy, claiming the same as theirs under the will of their father, denying that anyone else had an interest in it. Her brother was then a minor, and there was no agreement or understanding between them, or with anyone else, authorizing her to take and hold such possession for him. Roberta held possession of the property, it being fenced, using and claiming it as her own and her brother's, from that time until May 24, 1898, when she and her brother partitioned it between them, Robert and his wife conveying to Roberta Lankford lot one and the adjoining fifty by fifty feet of lot twelve, she and her husband conveying to Edith Boyce, wife of Robert, lot two and fifty by fifty feet of lot twelve, each deed reciting that it was for the purpose of partition. Actual possession of Robert Boyce never began until the summer of 1897, when he moved a house on to the part of the land afterwards allotted him by the partition. His occupancy of it as a home continued from that time until August 28, 1900, when he and his wife conveyed it to the defendants, C. H. Myers and wife. The possession of Roberta C. Lankford continued from February, 1890, until in March, 1900, the date of her death, which occurred in March, 1900, and has been continued by her executor, W. G. Sears, and the defendants, Myers, to whom the executor conveyed the part partitioned to her by his deed of August 28, 1900, from that date until the time of the trial of this case. The defendants Myers also took possession of that part of the property allotted in the partition to Edith Boyce and have continued in such possession from then until now. From the date of the partition between Roberta Lankford and her brother, the possession of neither of the respective parties to the partition extended beyond the part allotted to her or him. During the entire time of Mrs. Lankford's possession, her mother, Mary F. Boyce, knew that she was claiming all of the land under her father's will as the property of herself and brother Robert, and consequently that such possession was taken and continued adverse to her (Mary F.'s) community interest."

The application for writ of error in this case made by B. F. Frey can not be considered by this court for the reason that no motion for a rehearing was made in the Court of Civil Appeals within the time prescribed, nor was any sufficient excuse shown for the failure to file such motion. The application is therefore dismissed.

If one who claims property under a title to himself and another takes possession of the whole of the property for himself and for

his cotenant, holding the same adversely to every other person for the period of time required by law, such possession will inure to the benefit of the cotenant not in actual possession and bar any recovery against such cotenant out of possession the same as against him who is in possession. Terrell v. Martin, 64 Texas, 121.

Granting that Mrs. Lankford took actual possession of the entire. property, holding the same adversely to her mother and all others, for herself and her brother, claiming it under the will of her father, the question arises whether under the facts of this case that possession held for Robert was adverse to the mother. Robert was a minor about fourteen years old when his father died; he continued to live with his mother until he was married in about the year 1896, except during the time he was occasionally away from home. Robert did not know that his sister, Mrs. Lankford, was claiming the property for him against his mother, and he testified that neither he nor his sister made any claim adversely to his mother under the will until the year 1895, at which time they first learned that the lots were the separate property of their father. Mrs. Boyce, the mother, was the executrix of her husband's will, and controlled the estate until 1896. The property in controversy was invoiced as community property. Robert testified that from the time he was sixteen years old until the partition of the estate in 1896, or 1897, he paid the taxes and collected the rent upon the property at different times; he does not state that he paid the taxes and collected the rent for his mother, but that is the only reasonable deduction from his evidence, because whether the lots were community or separate property the mother had the lawful custody of them and it was her duty and right to pay the taxes and collect the rent. The important point in this testimony is that Robert has at all times recognized the right of his mother to one-half of the property. Now, if Robert himself had been in actual possession of the lots and during the time had recognized his mother's right, surely the statute of limitation would not have run against her in his favor. The possession held by Mrs. Lankford for him could not give him a greater right than the actual possession by himself under the same facts would have conferred. We therefore conclude that under the facts of this case the claim of Mrs. Boyce and those asserting title under her was not barred by the possession held by Mrs. Lankford on Robert's behalf.

This brings us to the same conclusion reached by the Court of Civil Appeals and we therefore affirm the judgment of the said court.

*Affirmed.*